IDA COTT, as Administratrix, etc., of MARTIN COTT, Deceased, Respondent, *v.* THE ERIE RAILROAD COMPANY, as Lessee of the BUFFALO CREEK RAILROAD COMPANY, and LEHIGH VALLEY RAILROAD COMPANY, Individually and as Lessee of the BUFFALO CREEK RAILROAD COMPANY, Appellants, Impleaded with BUFFALO CREEK RAILROAD COMPANY, Defendant.

Fourth Department, December 5, 1919.

Railroads — negligence — action under Federal Employers' Liability Act united with action under Code of Civil Procedure and at common law against codefendant — distinction between grounds of liability — liability of joint lessees — railroad not employer liable under Code of Civil Procedure and at common law — misjoinder of causes of action — ignorance of employee that he is engaged in interstate commerce immaterial — charge and refusal to charge approved — choice of plaintiff to collect judgment under Federal act or upon judgment at common law.

Where the plaintiff's intestate, a freight yard conductor, was killed by the derailment of a freight engine on which he was riding in the prosecution of his work, consisting of the transfer of interstate freight over a local

railroad, and it appears that said railroad was leased and operated jointly by the intestate's employer, which was engaged in interstate commerce, and also by another railroad company by which the intestate was not employed, the liability of the intestate's employer for his death is governed by the Federal Employers' Liability Act, while the liability of the other railroad company asserted in the same action is governed by the Code of Civil Procedure, section 1902 *et seq.*, and by the rules of the common law, for in the latter action the relation of master and servant did not exist.

Although the recovery against the intestate's employer, engaged in interstate commerce, is governed exclusively by the Federal Employers' Liability Act, said act has no application whatever to an injury inflicted upon an employee engaged in interstate commerce by a third party who is not the employer.

Irrespective of whether the plaintiff could unite the action under the Federal statute against the employer of the intestate with an action at common law against the other lessee of the road on which the intestate was killed, the objection cannot be taken for the first time upon appeal. The misjoinder of causes of action was a ground for demurrer to the complaint and if not taken by demurrer or answer is waived.

The plaintiff is entitled to recover under the Federal Employers' Liability Act although the intestate at the time of his death was not aware of the fact that the articles moved were subjects of interstate commerce and although at the time of the accident no through bill of lading had been issued, if in fact the cars had started with goods loaded for export to a foreign country.

Since the road upon which the intestate was killed was leased and operated by both the defendants jointly, they were both under the duty of keeping the tracks in a safe condition for use not only by their own employees but by those of other companies whom they invited to use the tracks, and hence it was not error for the court to refuse to draw a distinction between the duties of the two defendants in this respect, or to refuse to charge that if the defect was caused by the lessor which did not employ the intestate there could be no verdict against the intestate's employer, or that the employer of the intestate was not liable for any acts of the company which did not employ the intestate.

*Held,* that the charge did not permit the jury to fix a liability upon the employer of the intestate except under the provisions of the Federal act.

The fact that the verdict against the two defendants, one under the Federal act and the other under the State law, might enable the widow of the intestate to profit more by collecting her judgment from one defendant than from the other is not a ground for reversal.

Kruse, P. J., dissented, with memorandum.

Appeal by the defendants, The Erie Railroad Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county

of Erie on the 29th day of April, 1919, upon the verdict of a jury for $20,000, and also from an order entered in said clerk's office on the 26th day of March, 1919, denying defendants' motion for a new trial made upon the minutes.

*Moot, Sprague, Brownell & Marcy* [*John W. Ryan* of counsel], for the appellant Erie Railroad Company.

*Kenefick, Cooke, Mitchell & Bass* [*Lyman M. Bass* of counsel], for the appellant Lehigh Valley Railroad Company.

*Hamilton Ward*, for the respondent.

FOOTE, J.:

Plaintiff's intestate, Martin Cott, was a freight yard conductor in the employ of the Lehigh Valley Railroad Company. He was killed by the derailment of one of defendant's freight engines on which he was riding in the prosecution of his work. He and the crew of which he was a member had moved three loaded freight cars from his employer's freight yard in Buffalo over a connecting track onto the Buffalo Creek railroad, where they were left, and in returning the engine on which he was riding was derailed by an open switch on the Buffalo Creek railroad. This switch was at the junction of a track leading into the McLean lumber yard with the connecting track of these two railroads. The accident happened in the night time and the jury undoubtedly found that this switch was open when it should have been closed, and that deceased and the members of his crew had a right to proceed with their work on the assumption that it was closed.

The action as against the Lehigh Valley Company is brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143), on the theory that both that company and decedent were engaged in interstate commerce; and as against the Erie Company it is a common-law and statutory action for negligence. (See Code Civ. Proc. § 1902 *et seq.*)

The Buffalo Creek railroad is located wholly within the city of Buffalo. It connects with the Erie and the Lehigh and several other railroads, and its principal business is in transferring loaded freight cars from one of these railroads

to another, or from industrial plants located upon its line to other railroads. It is operated by the Lehigh and Erie Railroad Companies jointly, all its lines and equipment being leased to those two companies. The three cars which decedent's crew moved in upon the Buffalo Creek tracks were loaded with meat and were delivered to the Buffalo Creek Company for the purpose of having that company deliver them to the New York Central Railroad Company for shipment to Montreal, Canada, to be exported to Europe.

The duty of keeping the track and switch in proper condition for use rested upon the Lehigh and Erie Companies jointly as lessees and operators of the Buffalo Creek Railroad Company, but plaintiff's intestate being at the time an employee of the Lehigh and engaged with it in interstate commerce, the liability of the Lehigh is governed exclusively by the Federal Employers' Liability Act and the negligence relied on and submitted to the jury is by reason of a " defect or insufficiency " in its " track, roadbed," etc., being one of the grounds of liability in section 1 of the Federal act. (35 U. S. Stat. at Large, 65, § 1.) But as the relation of master and servant did not exist as between the Erie Company and plaintiff's intestate, the Federal act does not apply to or affect the liability of the Erie Company, which is governed by the common law and Code of Civil Procedure (§ 1902 et seq.).

In behalf of the Erie Company it is urged on this appeal that plaintiff's sole remedy is under the Federal Employers' Liability Act and that recovery under that act having been had by the jury's verdict against the Lehigh, there can be no further recovery against the Erie. It is quite true that the Federal act is controlling in cases where it applies, and that the liability imposed by that act is exclusive of all other liability as between an injured employee and his employer, but the act has no application whatever to an injury inflicted upon an employee engaged in interstate commerce by a third party who is not an employer. We are referred to the cases of Taylor v. Taylor (232 U. S. 363); New York Central R. R. Co. v. Winfield (244 id. 147); Erie R. R. Co. v. Winfield (Id. 170); New York Central & H. R. R. R. Co. v. Tonsellito (Id. 360), as holding that the liabilities created by the act are exclusive of all others, but those were cases as between master and

servant or their representatives, and the question was not considered as to whether the act affected the liability of a third person, not his employer, to an injured employee.

It is next urged in behalf of the Erie Company that recovery cannot be had in a single action against the Lehigh under the Federal statute, and against the Erie under the common law, that is to say, that two causes of action have been improperly united. It is a sufficient answer to this position that it is now taken for the first time. It was a ground for demurrer to the complaint (Code Civ. Proc. § 488), and if not taken by demurrer or answer, it is waived (Code Civ. Proc. § 499).

There are other grounds of error urged on behalf of the Erie Company, none of which, as we think, is well taken.

On behalf of the Lehigh Company it is urged that the trial court erred in holding as matter of law that the Lehigh Company and plaintiff's intestate were engaged in interstate commerce at the time he was killed. This point is predicated upon the fact that it did not appear that plaintiff's intestate, or the crew of which he was a member, were aware that the three cars of meat which they moved onto the Buffalo Creek railroad were destined outside of the State and so would be moved in interstate commerce and on the further fact that no through billing had been issued for these cars at the time they were delivered on the Buffalo Creek tracks. It appeared, without dispute, that these cars had started on a through journey to Montreal loaded with meat for export from that port. They did not receive their billing until delivered to the New York Central Company and the shipper arranged directly with that company for the shipment and billing. The movement in the Lehigh Valley yard and on the Buffalo Creek was in the nature of a switching movement. From the time they began to move as loaded cars destined as stated, their movement was clearly in interstate commerce, whether the persons handling the cars were aware of it or not.

Such is the settled doctrine of the Federal courts. (*The Daniel Ball,* 77 U. S. [10 Wall.] 557; *Louisiana R. R. Commission v. Texas & Pacific Railway,* 229 id. 336.) In the latter case it is said in the head note: " Commerce takes its character as interstate or foreign when it is actually started in the course

of transportation to another State or to a foreign country. In this case staves and logs intended by the shippers to be exported to foreign countries and shipped from points within the State to a seaport also therein from which they were to be exported were in interstate and foreign commerce notwithstanding they were shipped on local bills of lading for the initial journey and were subject to interstate and not intrastate charges, and within Federal and not State jurisdiction."

The case of *Gulf, Colorado & Santa Fé R. Co.* v. *Texas* (204 U. S. 403) we think holds nothing to the contrary.

It is further urged in behalf of the Lehigh that the trial court erred in permitting its liability to be predicated upon the failure of that company to perform its common-law duties as colessee with the Erie of the Buffalo Creek tracks, assuming that the liability of the Lehigh is under the Federal Employers' Liability Act. The court charged that the Lehigh and Erie as lessees of the Buffalo Creek were presumptively responsible for the condition of the switch, unless it affirmatively appeared to the contrary. Counsel for the Lehigh requested the court to charge that if the jury found that the switch was misplaced by the Erie Company or its employees, then there should be a verdict of no cause of action against the Lehigh Valley; also that the Lehigh as employer of plaintiff's intestate was not liable for any acts of the Erie or its employees in connection with the operation of the switches; also that with regard to any obligation that may arise under the lease as joint lessee with the Erie the Federal Employers' Liability Act does not apply. These requests were declined and the exceptions taken in behalf of the Lehigh are now urged to have been well taken.

The same duty rested upon both the Erie and the Lehigh Companies to keep the tracks and switches of the Buffalo Creek Railroad Company in safe condition for use not only of their own employees but of those of other companies whom they invited to make use of them. The duty which the Lehigh Company owed to its employees is that enjoined by the Federal act, while the duty which the Erie Company owed to the employees of other companies invited by it to use these tracks is that imposed by the common law. It is not perceived that any distinction can be made between the duty of the

Lehigh toward its employees as respects the tracks of its own road and the tracks of the Buffalo Creek, of which it was in control as lessee jointly with the Erie Company.

The learned counsel for the Lehigh now contends that the rulings of the trial court permitted the jury to fix a liability upon the Lehigh Company for the supposed violation by it of some duty arising under the lease under the Federal Employers' Liability Act in respect of defects or insufficiency in its tracks or roadbed. We think it was not the intent of the trial court to draw any such distinction, and that the jury were not misled into holding the Lehigh Company liable except under the provisions of the Federal act, and that these rulings would not justify us in reversing the judgment.

The other points urged for reversal in behalf of the Lehigh do not commend themselves as sufficient for that purpose.

The verdict of the jury was in favor of plaintiff against both defendants for $20,000. Under the instructions of the trial court the verdict as against the Lehigh was apportioned as between the widow and the four children according to the loss the jury found each had sustained, while the verdict against the Erie was, of course, not apportioned. But in the case of the Erie interest was added from the date of the decedent's death, while interest against the Lehigh was computed only from the date of the verdict. For this reason the verdict against the Erie Company is for a somewhat larger amount.

Attention is called by counsel that the jury have apportioned to the widow in their verdict against the Lehigh $11,082, while under our State statute she will be entitled to only $7,327 of the $20,000 verdict against the Erie, and that thus she is in a position to benefit herself and prejudice her children by collecting her judgment from the Lehigh Company rather than the Erie Company. It is true that this is the case, but we do not perceive that it affords any ground for our interference with the judgments as they stand.

The judgments should be affirmed, with costs.

All concurred, except KRUSE, P. J., who dissented in a memorandum.

KRUSE, P. J. (dissenting):

If the Lehigh Company was engaged in foreign commerce, and plaintiff's intestate, its employee, was employed therein at the time he was hurt, as we may be required to hold (*Louisiana R. R. Commission* v. *Texas & Pacific Railway*, 229 U. S. 336), the liability of that company is governed exclusively by the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143), while that of its codefendant, the Erie Company, is to be determined by the laws of this State. (See Code Civ. Proc. § 1902 *et seq.*)

If the two defendants are to be regarded as joint tort feasors in causing the death of the intestate, or even if there are two independent causes of action, and not so inconsistent with each other that they may be prosecuted to judgment together and the joinder of them in one action a mere matter of procedure, then I think, even though they may be improperly joined, Mr. Justice FOOTE is right in holding that the question has been waived. I assume his conclusion is correct, but there are other questions raised which, it seems to me, require a reversal.

The learned trial judge charged that the Federal Employers' Liability Act was applicable to the claim against the Lehigh Valley Company, and also against the Erie as a joint operator of the Buffalo Creek Railroad Company, except as to the question of contributory negligence.

The jury was further instructed that it was a general rule of law that a master, as master and employer, as was the Lehigh Company, is bound to use reasonable care and prudence for the safety of its servants in providing safe places wherein to work, and to maintain them in a reasonably safe condition, and that the jury were to consider whether or not the Lehigh Company exercised due care in providing and maintaining a safe place to work for the plaintiff's intestate, as bearing upon the question of the negligence of the defendants.

While the instruction that the Erie Company's liability was measured by the Federal Employers' Liability Act, except as to contributory negligence, was modified, after exception, by stating that the court meant that the Erie Company was subject to common-law liability alone, no modification of the

charge respecting a safe place was made, and the request to charge made on behalf of the Lehigh Company, that there was no question of unsafe place to work involved, was refused, as was also the request that the Lehigh Company was not liable for any acts of the Erie Company or its employees in connection with the operation of the switch, and proper exceptions taken to the rulings, to the charge as made, and the refusal to charge as requested.

As I view the case it is not one of unsafe place. The accident happened, not because the switch was defective, but because it was left open. If that condition was caused by the employees of the Lehigh Company it is liable therefor, and perhaps even if it was not, the open switch may be regarded as a defect covered by the Federal Employers' Liability Act.

That, however, is not so as to the Erie Company. Its liability is governed by the principles of the common law There was no contractual relation between the deceased and the Erie Company, nor was he its invitee; he was there as an employee of the Lehigh Company, and unless it be shown that the Erie Company failed in some duty it owed to him, no liability arises against it.

If the accident happened through the failure of the Buffalo Creek switchman to close the switch, as seems possible, the Lehigh Company may be liable, but, as it seems to me, the negligence should not make the Erie Company liable therefor to the Lehigh Company.

Judgment and order affirmed, with costs.